(No. 35459.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ARIZONO MINOR, Plaintiff in Error.

*Opinion filed December 1, 1960.*

Arizono Minor, *pro se.*

William L. Guild, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Francis X. Riley, and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

The defendant Arizono Minor was indicted together with one Claiborne for both robbery and armed robbery of Wade Batteast. Defendant was tried by a jury in the criminal court of Cook County and found guilty of robbery while unarmed. He was sentenced to 5 to 10 years in the penitentiary and brings this cause before us on writ of error.

Defendant, who was represented by counsel in the trial court, appears before us *pro se,* and his brief and argument are not as clear as we might desire. We have, therefore, carefully examined the complete record to determine the facts of the case.

During the trial Wade Batteast, the complaining witness, and Joseph Sanders, the arresting officer, testified on behalf of the People.

Batteast testified that he boarded an eastbound Madison Street bus about 12:05 A.M. on June 30, 1957, in Chicago. He rode from Hoyne and Madison to Halsted and Madison where defendant, together with his codefendant Preston Claiborne, got on the bus. Batteast noticed that Minor wore a rust-colored shirt, pants with the cuffs rolled twice, and a straw hat. Claiborne sat in the seat behind Batteast, while Minor first sat in a seat across from Batteast, and then changed seats and sat beside him, although there were only about eight people on the bus at the time.

Batteast felt a "sharp point" on his neck, and while Claiborne searched him from behind, Minor took his wallet containing about $40 from his left-rear pocket.

As the bus reached Wacker Drive, the defendants got off. Batteast then talked with the bus driver and rode the bus back west to Austin Blvd. where he boarded another eastbound Madison Street bus. On the way back downtown, Batteast saw defendant and Claiborne get on the bus at Clark and Washington. Batteast then left the bus and proceeded to Randolph and Dearborn where he met Chicago police officer Joseph Sanders.

Sanders and Batteast talked to a bus driver and a subway cashier, and when they came to State and Washington they saw Minor and Claiborne waiting for a bus.

Sanders testified that he approached defendants, placed them under arrest, and asked Minor: "I asked him if he had taken that man's wallet, and he says no. And at that time I said 'Well the man claims you did.' He says 'How much did that boy say he had in his wallet?' I says, '$40.00' He said, 'He didn't have anywhere near that much.' He said, 'But I will give him $40.00 and give you something for your trouble if you won't call the wagon.'" Batteast then joined the group, and Sanders told Minor: "'Then you admit you took the wallet.' And he says, 'Try and prove it.'"

Claiborne and Minor were then taken to the police sta-

tion where a search of Minor revealed $107 in currency. Sanders had taken a small knife from Minor on the street.

James Kane, a deputy clerk of the municipal court of Chicago, testified that the defendants subsequently appeared in felony court, for arraignment.

Defendant Minor contends that he was denied due process of law; that he was twice placed in jeopardy; that the indictment was void; that he was not proved guilty beyond a reasonable doubt; that the conduct of the court and the State's Attorney was prejudicial, and that the instructions were erroneous.

Defendant's complaint of deprivation of due process apparently is based on events alleged to have taken place after the arrest and at the preliminary hearing. These complaints are without any basis in the record before us and, therefore, cannot be considered. Defendant's novel argument that he was placed in double jeopardy because he was tried on a two-count indictment and found guilty on the lesser charge is likewise without merit. *People* v. *Gray,* 402 Ill. 590; *People* v. *Montgares,* 347 Ill. 562; 21 I.L.P. pp. 403-407, sec. 73.

We have also examined the indictment and we find it in proper form. The possible variance between the first name Arizon, as the indictment charges, and Arizono, as defendant calls himself is not fatal. *People* v. *Goldberg,* 287 Ill. 238, 243.

The entire record fails to indicate a single instance of prejudicial misconduct by either the trial judge or the State's Attorney. The record indicates no objection to the instructions, and this ground for reversal is, therefore, waived, as we have examined all the instructions and fail to find any substantial defect therein. Ill. Rev. Stat. 1959, chap. 110 par. 101.25.

Defendant's argument with regard to the sufficiency of the evidence to convict is apparently based upon minor discrepancies in the testimony with regard to a knife, and

the improbability of Batteast's testimony. We have carefully reviewed the testimony of Batteast and we are convinced that it was positive and credible and therefore sufficient to convict. (*People* v. *Pride,* 16 Ill.2d 82, 90; *People* v. *West,* 15 Ill.2d 171.) Moreover the defendant's statements to the arresting officer were admissions indicative of guilt. (*People* v. *Stanton,* 16 Ill.2d 459.) The lack of evidence as to the use of a knife is irrelevant here, as the jury found defendant guilty only of robbery while unarmed.

After full consideration, we find the entire record free from prejudicial error, and fully sufficient to sustain the conviction. The judgment of the trial court must accordingly be affirmed.

*Judgment affirmed.*